IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATHANIEL JACKSON, #B15383, | ) |
| Plaintiff, | ) |
| vs. | ) No. 12-1084 |
| ALTON ANGUS, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, ALTON ANGUS, MICHAEL MELVIN, JOHN GARLICK, BRIAN MAIER, MATTHEW TAYLOR, KEVIN EDENS, AND WILLIAM ZIMMERMAN ("IDOC Defendants"), by their counsel, Lisa Madigan, Attorney General of the State of Illinois, state the following for their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D).

## I.   INTRODUCTION

Plaintiff, Nathaniel Jackson, #B-15383, was at all relevant times an inmate of the Illinois Department of Corrections incarcerated in Pontiac Correctional Center ("Pontiac") and in the Dixon Special Treatment Center ("Dixon STC"). (Dkt. No. 76). Plaintiff's current claims, pursuant to 42 U.S.C. § 1983, are a claim for procedural due process violation against Defendants Angus, Garlick, and Melvin (Count 1), a claim for retaliation against all Defendants (Count 2), and a claim for excessive force against the members of the Pontiac Correctional Center TACT team unit (Defendants Taylor, Maier, Edens, and Zimmerman, collectively the "TACT Team") (Count 3). (Dkt. No. 89 at p. 5).

1

Plaintiff claims a violation of his procedural due process because he was transferred from Pontiac to Dixon STC in July 2012 and March 2011 (the "Transfers at Issue"). (Dkt. No. 89 at p. 5). Plaintiff further claims that he was subjected to excessive force when he was removed from his cell at Pontiac for transfer to Dixon STC on March 7, 2011. (Dkt. No. 89 at p. 5). Plaintiff also alleges he was involuntarily transferred to Dixon STC in October 2006 and April 2008, but these claims are barred by the statute of limitations.

In the time periods preceding each of the Transfers at Issue, Plaintiff's medical records clearly indicate that Plaintiff was diagnosed by mental health professionals as requiring mental health treatment. (Dkt. No. 399 at p. 5). In each instance, Plaintiff was given notice and the opportunity to request a hearing before the Placement Review Board regarding each of his transfers, yet Plaintiff refused all of these opportunities. (Dkt. No. 399 at p. 6).

Furthermore, a review of the video footage of the removal of Plaintiff from his cell at Pontiac for transfer on July 23, 2012, clearly shows that none of the IDOC Defendants used excessive force to remove Plaintiff from his cell. (*See* Exhibit 1 hereto, Declaration of Jim Attig, Exhibit A, video of cell extraction on July 23, 2012). As such, no genuine issue of material fact exists as to Plaintiff's claims against the IDOC Defendants, and the IDOC Defendants are entitled to judgment as a matter of law.

## II.    UNDISPUTED MATERIAL FACTS

The IDOC Defendants adopt and incorporate by reference the Undisputed Material Fact Paragraphs 1-118 as set forth in the Motion for Summary Judgment filed by Dr. Jose Matthews and Dr. Jamie Lynn Chess. (Dkt. No. 399 "Wexford Defendants" and "Wexford UMF"). The IDOC Defendants offer the following additional undisputed material facts ("IDOC UMF"):

1. On March 7, 2011 Defendants Maier, Edens, and Zimmerman extracted Plaintiff from his cell at Pontiac. (Dkt. No. 89 at p. 5).

2. A video was taken during this extraction. (*See* Exhibit A to Exhibit 1).

3. Prior to removal of Plaintiff from his cell at Pontiac for transfer on July 23, 2012, Plaintiff was given three direct orders to cuff up and warned after each instance that if he did not comply, pepper spray would be used to extract him from his cell. (*See* Exhibit A to Exhibit 1).

4. After the third direct order, two bursts of pepper spray were used in an attempt to get Plaintiff to comply with the three direct orders he had been given. (*See* Exhibit A to Exhibit 1).

5. After the two burst of pepper spray were sprayed into Plaintiff's cell, a fourth direct order was issued for Plaintiff to cuff up, and Plaintiff was again warned that if he failed to comply, pepper spray would be used to extract him from his cell. (*See* Exhibit A to Exhibit 1).

6. After the fourth direct order, Plaintiff complied, was cuffed, and was removed from his cell without issue. (*See* Exhibit A to Exhibit 1).

7. After being removed from his cell, Plaintiff was immediately taken outside and was provided medical attention by a member of the medical staff who washed the pepper spray out of Plaintiff's eyes. (*See* Exhibit A to Exhibit 1).

8. Plaintiff alleges that Defendants Angus, Garlick, and Melvin violated his rights under the Fourteenth Amendment's Due Process Clause by placing him in Dixon STC without proof of his mental illness and without providing the required procedural protections. (*See* Merit Review and Case Management Order, Dkt. No. 89 at p. 2).

9. Plaintiff was given a hearing regarding the March 7, 2011 transfer before the Placement Review Board, including Angus, Garlick, and Melvin on or about January 18, 2011. (*See* Deposition of Nathaniel Jackson, attached hereto as Exhibit 2, at pp. 54-56).

10. Plaintiff chose not to attend the hearing on or about January 18, 2011 because he "didn't feel I needed to be there." (*See* Deposition of Nathaniel Jackson, attached hereto as Exhibit 2, at p. 56:8-9).

11. Plaintiff claims that Maier, Taylor, Edens, and Zimmerman viciously assaulted him and pepper sprayed him on July 23, 2012. (*See* Merit Review and Case Management Order, Dkt. No. 89 at p. 3).

12. Defendant Edens was at all relevant times a correctional officer at Pontiac and a member of the TACT Team. (Dkt. No. 104 at p. 1).

13. Defendant Maier was at all relevant times a correctional officer at Pontiac and a member of the TACT Team. (*See* Merit Review and Case Management Order, Dkt. No. 89 at p. 3).

14. Defendant Zimmerman was at all relevant times a correctional officer at Pontiac and a member of the TACT Team. (Dkt. No. 104 at p. 1).

15. Defendant Taylor was at all relevant times a correctional lieutenant at Pontiac and a member of the TACT Team. (Dkt. No. 104 at p. 1).

16. Defendant Edens was at all relevant times a correctional officer at Pontiac and a member of the TACT Team. (Dkt. No. 104 at p. 1).

17. Defendant Angus was at all relevant times a psychologist at Pontiac. (Dkt. No. 76 at p. 2).

18. Defendant Melvin was at all relevant times a superintendent at Pontiac. (Dkt. No. 76 at pp. 2-3).

19. Defendant Garlick was at all relevant times a mental health administrator at Pontiac. (Dkt. No. 76 at p. 3).

### III. ARGUMENT

#### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether or not there is a genuine need for a trial. If Defendants meet their burden in showing there is an absence of evidence to support Plaintiff's claim, Plaintiff must demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). In determining and evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the opposing party and draws all justifiable inferences in his favor. A mere scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (*citing Celotex Corp.*, 477 U.S. at 322 (1986)). In the instance where there is an absence of

evidence to support a non-moving party's case, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 325; *see also*, Federal Rule of Civil Procedure 56(e); *Outlaw*, 259 F.3d at 837. A non-moving party may not rest on its pleadings, but must demonstrate that there is some admissible evidence that would support his or her position. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994).

Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000).

    **B.    Plaintiff Has Failed To Provide Sufficient Admissible Evidence to Support His Claims**

        **1.    Plaintiff's procedural due process claim against Angus, Melvin, and Garlick fails because the Defendants made decisions based on their professional medical opinions.**

The involuntary transfer of a prisoner to a mental health hospital implicates a liberty interest protected by the Fourteenth Amendment's Due Process Clause. *Vitek v. Jones*, 445 U.S. 480, 487-88 (1980). Providing that the requisite procedural protections include, among other things, written notice to the prisoner and a written statement by the factfinder as to the evidence relied upon and the reasons for transferring the inmate. *See Vitek*, 445 U.S. at 491, 493, 494-95.

Here, Plaintiff has alleged that Angus, Garlick, and Melvin violated his rights under the Fourteenth Amendment's Due Process Clause by placing him in Dixon STC without proof of his mental health and without providing the required procedural protections. (Statement of Facts ¶ 21). However, Plaintiff was provided significant procedural protections. Plaintiff was given a hearing before the Placement Review Board, including Angus, Garlick, and Melvin on or about January 18, 2011. (Statement of Facts ¶ 22). Plaintiff chose not to attend the hearing because he "didn't feel I needed to be there." (Statement of Facts ¶ 23).

Furthermore, Plaintiff's mental health records indicate that on July 16, 2012, Garlick entered a note regarding the placement review committee. (Wexford UMF ¶¶ 49-51). Garlick's note states that the placement review committee met to consider a psychiatric recommendation for Mr. Jackson to transfer to the Dixon Special Treatment Center. *Id.* Mr. Jackson refused to attend the hearing. *Id.* The board concurred with the psychiatric recommendation. *Id.* Garlick's note shows his assessment was paranoid schizophrenia and ruled out delusional disorder. *Id.* Garlick's note says the plan is to transfer Plaintiff to Dixon STC upon completion of administrative procedures. *Id.* Plaintiff was also provided with written notice of his transfers to Dixon STC that included the findings of fact related to his transfers, but in each instance he refused to sign them. (Wexford UMF ¶¶ 16, 48, 70).

Plaintiff was provided with significant procedural protections, including the opportunity to discuss his possible transfer at a hearing before each of his transfers and written notices of the findings, which he refused to sign. The Court in *Vitek* specifically identified provision of written notice to the prisoner and a written statement by the factfinder to the prisoner as sufficient procedural protections. *See Vitek* at 494. As such, Defendants Angus, Garlick, and Melvin are entitled to judgment as a matter of law on Plaintiff's procedural due process claim.

### 2. Plaintiff's excessive force claim fails because he has not provided sufficient evidence that Defendants viciously assaulted him or used an excessive amount of pepper spray when extracting him from his cell.

To prove an excessive force claim, an inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (*citing Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to

7

temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim; at the same time, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37–38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837–38 (7th Cir. 2001).

Here Plaintiff claims that Maier, Taylor, Edens, and Zimmerman viciously assaulted him and pepper sprayed him on July 23, 2012. (Statement of Facts ¶ 24). However, the video attached hereto as Exhibit A to Exhibit 1 clearly demonstrates that no excessive force was used. (*See* Exhibit A to Exhibit 1). Plaintiff was given three direct orders to cuff up and warned after each instance that if he did not comply, pepper spray would be used to extract him from his cell. *Id.* at 00:30, 00:40, 00:50. After the third direct order, two bursts of pepper spray were used in an attempt to get Plaintiff to comply with the three direct orders he had been given. *Id.* at 1:00. After the two bursts of pepper spray were sprayed into Plaintiff's cell, a fourth direct order was issued for Plaintiff to cuff up, and Plaintiff was again warned that if he failed to comply, pepper spray would be used to extract him from his cell. *Id.* at 1:10. At that point, Plaintiff complied, was cuffed, and was removed from his cell without issue. *Id.* at 1:18. Plaintiff was immediately taken outside and was provided medical attention by a medical staff member who washed the pepper spray out of Plaintiff's eyes. *Id.*

The indisputable video evidence shows that Maier, Taylor, Edens, and Zimmerman used no excessive force when removing Plaintiff from his cell on July 23, 2012. *Id.* Furthermore, as soon as Plaintiff complied with the direct order he had then been given four times, Plaintiff was

provided with immediate medical attention to prevent any lasting pain or injury. *Id.* Plaintiff was able to walk under his own power without assistance leaving his cell and did not require assistance walking or descending stairs. *Id.* at 2:40 to 4:00. Once outside and receiving immediate medical attention, Plaintiff was able to communicate with and follow directions from the certified medical technician in order to immediately alleviate the effects of the pepper spray. *Id.* at 4:15. This indisputable video evidence shows that Plaintiff was not incapacitated in any way as a result of the use of two bursts of pepper spray. *Id.* at 2:40 to 4:00. When an inmate is not incapacitated by the use of pepper spray, such use has been held to be *de minimus*. *See Sanders v. Fredricks*, No. 10 C 5714, 2016 WL 8711472, at *6 (N.D. Ill. Jan. 8, 2016) (holding that where the inmate was "not incapacitated, or even slowed down much, by the pepper spray" and "[g]iven the totality of the circumstances" the use of pepper spray was *de minimus*) As such, Plaintiff was only subjected to *de minimus* force not excessive force.

Plaintiff's allegations of excessive force and conspiracy are insufficient because, as demonstrated by indisputable video evidence, Maier, Taylor, Edens, and Zimmerman did not use excessive force to extract Plaintiff from his cell on or about July 23, 2012 as they only used *de minimus* force consisting of two bursts of pepper spray that incapacitate Plaintiff. *Id.* As such, Maier, Taylor, Edens, and Zimmerman are entitled to judgment as a matter of law on Plaintiff's excessive force claim.

      **3.**      **Plaintiff's retaliation claim fails because he has failed to show that the IDOC Defendants caused him to suffer any deprivation of rights.**

To prevail on a First Amendment retaliation claim, Plaintiff must prove that he engaged in activity protected by the First Amendment, that he suffered a deprivation that would likely deter First Amendment activity in the future, and that the First Amendment activity was "at least a

motivating factor" in the Defendants' decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (*quoting Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

Here, Plaintiff has alleged that the IDOC Defendants conspired to retaliate against him and retaliated against him by placing him in Dixon STC because he filed grievances and civil rights complaints. [Statement of Facts ¶ 1.] However, as indicated above, Plaintiff's transfers were based on the findings of medical professional and were only completed after Plaintiff was given proper notice, hearings, and written findings. Furthermore, no excessive force was used in effectuating Plaintiff's transfers. As such, Plaintiff suffered no deprivation as required by *Woodruff*. *Woodruff* at 551. Therefore, no genuine issue of fact exists as to whether the IDOC Defendants retaliated against Plaintiff, and the IDOC Defendants are entitled to judgment as a matter of law.

WHEREFORE, the IDOC Defendants respectfully request that this Court enter summary judgment in their favor, and for any further relief the Court deems proper and just.

Dated: June 18, 2018

                                                          Respectfully submitted,

| | |
|---|---|
| LISA MADIGAN | By: s/ Jason J. Weigand |
| Illinois Attorney General | JASON J. WEIGAND |
| Jason J. Weigand, #6302117 | Assistant Attorney General |
| Assistant Attorney General, | |
| 100 W. Randolph Street, 12th Floor | |
| Chicago, Illinois 60601 | |
| (312) 814-3889 Phone | |
| (312) 814-4425 Fax | |
| Email: jweigand@atg.state.il.us | |

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATHANIEL JACKSON, #B15383, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 12-1084 |
| ) | |
| ALTON ANGUS, et al., ) | |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 18, 2018, the foregoing document, *Defendants' Motion for Summary Judgment*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered participants.

    I hereby certify that on the same date, I caused a copy of the same to be mailed by United States Postal Service, in an envelope, properly addressed and fully prepaid, to the following non-registered participant:

        Nathaniel Jackson
        6605 Carolina Avenue
        Hammond, IN 46323

        By:    s/Jason J. Weigand
                    Jason J. Weigand
                    Assistant Attorney General